574 A.2d 1161

**COMMONWEALTH of Pennsylvania**

v.

**Gary WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Argued March 14, 1990.

Filed May 17, 1990.

Peter Hall, Asst. Public Defender, Doylestown, for appellant.

Alan M. Rubenstein, Dist. Atty., Doylestown, for Com., appellee.

Before ROWLEY, BECK and MONTGOMERY, JJ.

BECK, Judge:

Gary Williams was tried by a jury and convicted of three offenses: loitering and prowling [1], disorderly conduct [2], and open lewdness.[3] On appeal from his judgment of sentence, he argues that the evidence adduced at trial was insufficient to sustain the jury's verdict as to each of these crimes. After careful consideration, we conclude that the evidence is insufficient to support the conviction for open lewdness and for disorderly conduct, but that the evidence is sufficient to support the conviction for loitering and prowling.

Viewed in the light most favorable to the Commonwealth as verdict winner, the essential facts are as follow. On May 1, 1988, shortly after midnight, appellant drove into the parking lot surrounding the Century Lane Apartments in Bensalem Township, Bucks County. The parking area was designed for the use of residents of the apartment complex and their guests. Appellant removed his trousers, exited his car, and began pacing nervously through the lot. He was clothed in a T-shirt and in underwear that consisted of elastic tight-fitting briefs. Holly Thoxton, a resident of the complex, looked through her apartment window and saw appellant entering a 1984 Ford Mustang that she knew was owned by her neighbor, Anita Nelson. The Ford Mustang was parked approximately thirty-five feet away from the front door of Thoxton's apartment.

Thoxton called the police. When the police arrived, they observed appellant crouching down on the passenger side of the Ford Mustang. They contacted Anita Nelson, who said that she did not know the appellant. Nelson also stated that she had locked her car doors. She later examined her car and noticed that the molding around the front windows had been bent out of shape and that the windows could not be closed.

1. 18 Pa.Cons.Stat.Ann. § 5503 (Purdon 1983).
2. 18 Pa.Cons.Stat.Ann. § 5506 (Purdon 1983).
3. 18 Pa.Cons.Stat.Ann. § 5901 (Purdon 1983).

Appellant was arrested and charged with attempted auto theft, as well as open lewdness, disorderly conduct, and loitering and prowling. Following a trial by jury, he was acquitted of attempted auto theft and convicted of the three other charges. Post-trial motions were denied, and on August 7, 1989, he received sentences of four and a half months to one year on each of the three counts. The court specified that each of the sentences were to be served consecutively so that the total period of imprisonment would be thirteen and a half months to three years. From this judgment of sentence, appellant filed a timely appeal.

Appellant challenges the sufficiency of the Commonwealth's evidence. Our standard of review is well established.

> The test for the sufficiency of the evidence in a criminal case is whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. *See Commonwealth v. Harper*, 485 Pa. 572, 403 A.2d 536 (1979). In making this determination, the reviewing court must view the evidence in the light most favorable to the Commonwealth as verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict. *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980).

*Commonwealth v. Hughes*, 521 Pa. 423, 430, 555 A.2d 1264, 1267 (1989).

■ We first consider the sufficiency of the evidence of open lewdness. Section 5901 of the Crimes Code states: "A person commits a misdemeanor of the third degree if he does any lewd act which he knows is likely to be observed by others who would be affronted or alarmed." For present purposes, we may assume that when appellant walked through the apartment parking lot without his trousers, he knew that he would be likely to be observed by the residents and that the residents would be offended. We must decide if appearing in a public place in one's underwear is a "lewd act" within the meaning of the statute.

In *Commonwealth v. Heinbaugh*, 467 Pa. 1, 354 A.2d 244 (1976), the Pennsylvania Supreme Court provided the following commentary on section 5901.

> Open lewdness was an indictable offense at common law. It was defined as an act of gross and open indecency which tends to corrupt the morals of the community. *Winters v. New York*, 333 U.S. 507, 515, 68 S.Ct. 665 [670], 92 L.Ed. 840, 849 (1948); *Commonwealth v. Sharpless*, 2 Serg. § R. 91, 100 (1815); IV Blackstone Commentaries 64 n. 38 (W. Lewis ed. 1898); 53 C.J.S. Lewdness, p. 4 (1948). While the language of the challenged Pennsylvania lewdness statute differs in some respects from the common law definition, there is no difference in meaning. The statute in question is a verbatim adoption of the lewdness provision of the Model Penal Code, ALI, Model Penal Code, Proposed Official Draft 251.1. The comment to that section makes it clear that the drafters intended to codify the pre-existing common law:
>
> > "Lewd or indecent behavior is punishable in all jurisdictions. The prohibited conduct amounts to gross flouting of community standards in respect to sexuality or nudity in public." ALI, Model Penal Code, Tentative Draft No. 13 §§ 213.4 & 251.1 Comment at p. 81.

467 Pa. at 8, 354 A.2d at 247.

In *Heinbaugh*, a defendant who was charged with masturbating in a public place argued that the open lewdness statute was unconstitutionally vague. The Court noted in its 1976 opinion that the "broadening of sexual permissiveness which is an undeniable aspect of contemporary American society may have served to shrink the perimeters of community morality...." and that "there might be ... conduct, clearly punishable at the time of Blackstone, which could not today be constitutionally punished under the statute." *Id.*, 467 Pa. at 9, 354 A.2d at 248. However, the Court found that the defendant's conduct was clearly indecent even by contemporary standards and that, as applied to the defendant, section 5901 was constitutional.

The Court again considered section 5901 in *Commonwealth v. Allsup*, 481 Pa. 313, 392 A.2d 1309 (1978). The precise holding of *Allsup* was that sexual acts performed before a paying audience in an enclosed area are not prohibited by the statute since no one who had paid to see the performance would be likely to be affronted or alarmed. During the course of the opinion, the majority summarized the Pennsylvania case law on open lewdness:

All prosecutions have been based, as the A.L.I.'s Criminal Law Advisory Committee states in its commentary, *supra*, on a "gross flouting of community standards in respect to sexuality or nudity in public." See *Commonwealth v. Heinbaugh, supra* (masturbation in public); *Commonwealth v. Davidson*, 220 Pa.Super. 451, 289 A.2d 250 (1972) allocatur refused, 221 Pa.Super. xlix (naked motorist stopped young lady to ask directions); *Commonwealth v. Falcone*, 202 Pa.Super. 474, 198 A.2d 421 (1964) (masturbation in a public cemetery); *Commonwealth v. Warner*, 51 Pa.D. & C.2d 63 (C.P.Centre Cnty.1971) (defendant disrobed in public, made uninvited visits to private homes, and entered a public pizza parlor); *Commonwealth v. Anzulewicz*, 42 Pa.D. & C.2d 484 (Q.S.Mont. Cnty.1967) (display of genitalia in private dwellings but in front of window where a neighboring family "in the reasonable use of [their] house" could not help but observe defendant's activities); *Commonwealth v. Helms*, 38 Pa.D. & C.2d 496 (Q.S.York Cnty.), aff'd per curiam, 206 Pa.Super. 743, 213 A.2d 389 (1965) (no offense made out where defendant's nudity was in private trailer and prosecution witness had to observe through small, louvred window); *Commonwealth v. Alessi*, 29 Erie 172 (Q.S.1947) (masturbation in a private home but before large window facing public street).

481 Pa. at 319, 392 A.2d at 1312 (footnote omitted).

Viewed against the background of these precedents, appellant's challenge to the sufficiency of the evidence of open lewdness has merit. All of the reported Pennsylvania cases on open lewdness involved public masturbation or public

displays of genitalia. Here, the Commonwealth merely established that appellant walked through a parking lot in a T-shirt and underwear. It must be emphasized that section 5901 does not proscribe all conduct that might be described as bizarre, or offensive, or distasteful, or as a breach of proper etiquette. Section 5901 extends only to conduct that: 1) involves public nudity or public sexuality, and 2) represents such a gross departure from accepted community standards as to rise to the level of criminal liability. Appellant's behavior cannot reasonably be found to fall within the purview of the statute. A person who is wearing a T-shirt and underwear is not appearing in the nude, and walking about in underwear may be a foolish act but is not a sexual act. We hold that the evidence of the crime of open lewdness was insufficient as a matter of law.

■ We next address the sufficiency of the evidence of disorderly conduct. Disorderly conduct is defined in relevant part as follows:

(a) **Offense defined.**— A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

. . . .

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.Cons.Stat.Ann. § 5503.

Appellant argues that the evidence at trial was insufficient to prove that he created a "hazardous or physically offensive condition" within the meaning of the statute. We agree.

Initially, we find that appellant did not create a "hazardous condition". A "hazardous condition" is a condition that involves danger or risk. *Commonwealth v. Roth*, 366 Pa.Super. 575, 582, 531 A.2d 1133, 1137 (1987). The dangers and risks against which the disorderly conduct statute are directed are the possibility of injuries resulting from

public disorders. For example, in the *Roth* case, a group of between twenty and thirty demonstrators attempted to enter a church during Easter Sunday services and dump scrap iron on the altar. Members of the congregation were frightened for their safety and were determined to prevent the demonstrators from trespassing on church property. After the demonstrators repeatedly refused to disperse, they were arrested and charged with disorderly conduct. On appeal, we found that the demonstrators had created a hazardous condition since "altercations between the demonstrators and Church members could have occurred." *Id.*, 366 Pa.Superior Ct. at 583, 531 A.2d at 1137.

On the other hand, we cannot conclude on the basis of the record in this case, that appellant created a significant risk or danger of injury to anyone. Appellant walked silently through a residential parking lot after midnight and entered a vacant car. His conduct was neither boisterous nor confrontational. He did not threaten any residents of the apartment house. There is no evidence that he distracted passing motorists or obstructed any exit or thoroughfare. The most serious consequence of appellant's odd behavior was that a single vehicle in the lot sustained damage to the molding around its windows. Such minor act of vandalism cannot be said to constitute a hazardous condition.

In an effort to sustain the conviction, the Commonwealth contends that a hazardous condition existed because a resident of the apartment complex contacted the police. The Commonwealth reasons that police vehicles speeding to the apartment building could have created traffic hazards on the roadways, and that police officers investigating the incident may not have responded as promptly to other calls. This argument proves too much. Under the Commonwealth's reasoning, any foolish act that might result in a routine call to the police, no matter how trivial or harmless the act may be, would be grounds for a criminal prosecution. We cannot uphold appellant's conviction based upon speculation concerning the indirect effects of actions taken by the police in the normal course of their duties.

Additionally, we find that appellant did not create a "physically offensive condition". Although a precise definition of "physically offensive condition" is elusive, this term encompasses direct assaults on the physical senses of members of the public. A defendant may create such a condition if she sets off a "stink bomb", strews rotting garbage in public places, or shines blinding lights in the eyes of others. *See Model Penal Code and Commentaries* § 250.2 commentary at 347 (Official Draft and Revised Comments 1980). Under extreme circumstances, a "physically offensive condition" may also result if a defendant invades the physical privacy of another person. In *Commonwealth v. Young*, 370 Pa.Super. 42, 535 A.2d 1141 (1988), two male defendants entered a women's restroom and intentionally confronted the victim while she was seated in a stall performing a private bodily function. In affirming convictions for disorderly conduct, a panel of this court noted that any reasonable person in the victim's situation would have been offended by the defendants' actions. *Id.*, 370 Pa.Superior Ct. at 47, 535 A.2d at 1143.

In the instant case, appellant did not directly assault the senses of the residents of the apartment house. Appellant did not invade the residents' physical privacy. All appellant did was enter a car belonging to someone else while dressed in his underwear. Although appellant was inadvertently observed by one of the tenants, we cannot say that she was *physically* offended by his conduct.[4] For some, the idea of wearing underwear in public may be morally offensive. Yet, the sight of a person in underwear is no more *physically* offensive that the sight of a person dressed in other eccentric costumes that from time to time come into fashion. In order to affirm appellant's conviction for disorderly conduct, we would have to stretch the words of the statute beyond all reasonable bounds.

4. Indeed, it is unclear whether the resident who called the police was even aware that appellant was clad in underwear. In her testimony, Commonwealth witness Holly Thoxton referred to appellant as wearing "shorts".

We must bear in mind the limited scope of the law against disorderly conduct. "The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." *Commonwealth v. Greene,* 410 Pa. 111, 115, 189 A.2d 141, 144 (1963). "The crime of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all irritations which breed in the community." *Id.,* 410 Pa. at 117, 189 A.2d at 145. We hold that the evidence of disorderly conduct in this case is insufficient as a matter of law.

■ Finally, we must consider the sufficiency of the evidence of loitering and prowling. Crimes Code section 5506 provides: "Whoever at night time maliciously loiters or maliciously prowls around a dwelling house or any other place used wholly or in part for living or dwelling purposes, belonging to or occupied by another, is guilty of a misdemeanor of the third degree."

Appellant argues that he did not loiter "around" the apartment building; he emphasizes that his activities took place in the parking lot outside the apartment building and were directed at cars in the parking lot rather than at specific rental units. However, in *Commonwealth v. Duncan,* 456 Pa. 495, 321 A.2d 917 (1974), the Pennsylvania Supreme Court broadly defined the word "around" as used in section 5506 as meaning "in the vicinity or neighborhood." *Id.,* 456 Pa. at 499, 321 A.2d at 919. The Court further noted that the purpose of section 5506 was to "alleviate the danger to human life and quiet enjoyment of one's dwelling which is presented by the nighttime loitering or prowling of malicious-minded individuals." *Id.,* 456 Pa. at 499, 321 A.2d at 919. Appellant clearly violated both the letter and the spirit of the statute by entering and lurking inside a car owned by a resident of the apartment house that was parked about thirty-five feet away from the apartment house in a lot designed for use by the tenants.

In summary, we conclude that the evidence is sufficient to establish the offense of loitering and prowling. We

conclude that the evidence is insufficient to establish the offenses of open lewdness and disorderly conduct.

The judgment of sentence is vacated and the case is remanded for resentencing consistent with this opinion. Jurisdiction is relinquished.