J-S36041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MORGAN B. FAHEY | : | |
| | : | |
| Appellant | : | No. 1914 MDA 2018 |

Appeal from the Judgment of Sentence Entered October 23, 2018
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0000433-2018

BEFORE: PANELLA, P.J., SHOGAN, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.: **FILED JULY 18, 2019**

Morgan B. Fahey (Fahey) appeals from the judgment of sentence entered in the Court of Common Pleas of Cumberland County (trial court) which, following a summary bench trial, found her guilty of Disorderly Conduct. She now challenges the sufficiency of evidence for her conviction. We affirm.

Fahey was a temporary laboratory technician for World Energy at their plant in Lower Allen Township, Cumberland County. During her employment, Fahey became upset that she was a temporary employee and told her co-workers that she planned to sue if World Energy did not hire her as a full-time employee. World Energy learned of these statements and terminated Fahey's employment.

_____

* Retired Senior Judge assigned to the Superior Court.

A week after the termination, Fahey tried to call the local fire department to report a chemical leak at World Energy's plant. The fire department told her to call Cumberland County Communications, which she did. Fahey told the dispatcher that there was a methanol leak at the World Energy plant as well as open containers of flammable substances. Based on this, the dispatcher notified multiple Lower Allen departments, including police, fire and emergency medical services, all of who immediately responded to World Energy's plant. In total, at least four emergency vehicles were dispatched to check on Fahey's claim.

Upon arriving, the responders spoke to the plant manager. He told them that there was no leak and that he believed it was a false alarm made by Fahey. The manager based this on a Facebook post by Fahey from earlier that morning. In the post, she wrote: "Well since I no longer work at World Energy guess it's time to make some calls. #DEP #OSHA #Lowerallenfiredepartment #messwiththebull #getthehorns." Despite the plant manager's belief, the responders still evacuated the plant, forcing all World Energy employees to leave the facility while the fire department and a public safety officer checked for any leaks or open containers of flammable substances. Finding none, the responders allowed the employees to reenter the facility and cleared the scene.

Fahey eventually proceeded to a summary bench trial for Disorderly Conduct, 18 Pa.C.S. § 5503(a)(4).[1]  At trial, Fahey testified that she saw the methanol leak a few days before her termination.  She claimed that she told several co-workers about the leak but they did not believe her.  When asked why she did not contact anyone outside of the company, Fahey testified that she feared World Energy would retaliate if she did so.  The trial court did not believe these claims and found Fahey guilty of Disorderly Conduct.[2]  She appealed and now contends there was insufficient evidence for the trial court to convict her of Disorderly Conduct.[3]

Section 5503 of the Crimes Code provides as follows:

**(a) Offense defined.**--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

---

[1] The Commonwealth originally charged Fahey with misdemeanor counts of False Alarm to Agencies of Public Safety and Disorderly Conduct.  After the charges were held for court, the Commonwealth dismissed the misdemeanor counts but added a summary count of Disorderly Conduct to the information.

[2] The trial court ordered Fahey to pay a $200 fine and the costs of prosecution.

[3] "A claim challenging the evidence is a question of law.  Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt....  When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence."  ***Commonwealth v. Nevels***, 203 A.3d 229, 241 (Pa. Super. 2019) (ellipsis in original and citation omitted).

* * *

> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a)(4).

Fahey divides her sufficiency claim into three separate arguments. First, she contends that the Commonwealth presented insufficient evidence to establish that she intended to or recklessly risked creating a public inconvenience, annoyance or alarm.[4] Next, Fahey argues the evidence was also insufficient to establish that she actually created a hazardous or physically offensive condition. Last, Fahey believes the Commonwealth did not prove that her actions lacked a legitimate purpose in that it failed to disprove that there actually was a leak. We find none of these arguments has merit.

As to the *mens rea* element, Fahey essentially asks us to credit her version of events that there was an actual chemical leak and read her Facebook post as meaning that she was "going to use legal means in exposing

---

[4] 18 Pa.C.S. § 302(b)(1) provides that a "person acts intentionally with respect to a material element of an offense when if the element involves the nature of his conduct or a result [of his conduct], it is his conscious object to engage in conduct of that nature or to cause such a result." For a person to act recklessly, 18 Pa.C.S. § 302(b)(3) provides that "a person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation."

the wrongdoings of her former employer." *See* Fahey's Brief, at 15. However, under sufficiency review, we must view the evidence in the light most favorable to the verdict winner and give the Commonwealth the benefit of all reasonable inferences to be drawn from the evidence. Here, the trial court concluded that Fahey "called in the false alarm and concocted the story of the chemical spill as retribution toward World Energy for terminating her employment." Trial Court Opinion (TCO), 3/19/19, at 4. There was ample evidence to support this conclusion: the circumstances of Fahey's recent termination; the timing and content of her Facebook post; and the responders finding no chemical leaks or open chemical containers. Based on all this, there was sufficient evidence for the trial court to disbelieve Fahey's testimony and credit the Commonwealth's version of events that she made a false report as a reprisal against her former employer for terminating her.

As part of her *mens rea* argument, Fahey also emphasizes that she did not call 911 but instead called the fire department first then the nonemergency phone number for Cumberland County Communications. According to her, this shows her lack of intent to cause a public inconvenience. We disagree. Even if Fahey's subjective intent was not to cause an emergency, her conduct was clearly, at the very least, reckless in that she consciously disregarded a substantial and unjustifiable risk that public annoyance or alarm would result by reporting a dangerous chemical leak. **See Commonwealth v. Troy**, 832 A.2d 1089, 1094 (Pa. Super. 2003) (Commonwealth can establish *mens rea*

for Disorderly Conduct by showing reckless disregard of the risk of public inconvenience, annoyance or alarm, even if defendant's intent was to send message to certain individual). The Commonwealth, thus, presented sufficient evidence to establish the *mens rea* element.[5]

Next, Fahey argues there was insufficient evidence that she created a hazardous or physically offensive condition because all that occurred is emergency personnel responded to the plant. In support, Fahey cites **Commonwealth v. Williams**, 574 A.2d 1161 (Pa. Super. 1990), which involved this Court finding that the police response to a report of public lewdness did not constitute a hazardous condition. **See id**. at 1164.

However, this case differs in kind from the routine situation involved in **Williams** when the police respond to a call of concern. Here, Fahey made a false report of a chemical leak that resulted in multiple emergency vehicles with multiple first responders being dispatched to a chemical plant. In addition, due to the necessary evacuation, all of the World Energy employees were forced to exit their workplace under the auspices that there was a dangerous chemical leak. Those employees then had to wait while a public

---

[5] Fahey notes that the trial court stated in its Rule 1925(a) opinion that "[t]he Commonwealth's charging largess aside, [Fahey's] conviction for disorderly conduct should be sustained." **See** TCO, at 5. Fahey interprets this comment as indicating the trial court's belief that her conduct "does not align with the crime for which she was charged." Fahey's Brief, at 18, n. 22. We interpret the trial court's statement to mean what it says: that there was sufficient evidence to convict for Disorderly Conduct.

safety officer and the fire department made a thorough check of the plant. There was no hazardous condition but there was sufficient evidence for the trial court to conclude that the false alarm created a physically offensive condition.

Finally, Fahey claims the Commonwealth failed to prove that her actions did not serve a legitimate purpose. For this contention, Fahey notes that the public safety officer admitted that he did not inspect the specific area that she told the dispatcher was leaking. However, this argument ignores the public safety officer's testimony that the Lower Allen Fire Department also inspected the "entire facility" and found no leaks. *See* N.T., 10/23/18, at 11. Moreover, under sufficiency review, the evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part or none of the evidence presented. *See Commonwealth v. Treece*, 161 A.3d 992, 994 (Pa. Super. 2017) (quotation omitted). As explained above, the trial court did not believe Fahey's claims about the leak and there was sufficient evidence to conclude that she falsified the methanol leak to get back at World Energy for her recent termination. Thus, there was sufficient evidence to conclude Fahey's actions served no legitimate purpose.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/18/2019